FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 30, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

MARION W.,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No. 1:17-CV-3127-JTR

ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

     **BEFORE THE COURT** are cross-motions for summary judgment.  ECF No. 15, 16.  Attorney D. James Tree represents Marion W. (Plaintiff); Special Assistant United States Attorney L. Jamala Edwards represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 3.  After reviewing the administrative record and briefs filed by the parties, the Court **GRANTS** Defendant's Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Summary Judgment.

## JURISDICTION

     On October 9, 2013, Plaintiff filed an application for disability insurance benefits, alleging disability since March 12, 2012, due to chronic low back pain, depression, atherosclerotic, memory loss, stomach pains, and headaches.  Tr. 166, 192.  Plaintiff's application was denied initially and upon reconsideration.

Administrative Law Judge (ALJ) Kimberly Boyce held a hearing on September 8, 2015, Tr. 42-78, and issued an unfavorable decision on February 10, 2016, Tr. 20-33. The Appeals Council denied review on May 26, 2017. Tr. 1-6. The ALJ's February 2016 decision thus became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Plaintiff filed this action for judicial review on July 28, 2017. ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties. They are only briefly summarized here.

Plaintiff was born on March 1, 1971, and was 41 years old on the alleged onset date, March 12, 2012. Tr. 48,166. She completed high school and two years of college. Tr. 49, 193. Plaintiff's disability report indicates she stopped working on March 12, 2012, because of her condition(s). Tr. 192. She testified she was injured on the job after a fall, Tr. 64, and the main thing preventing her from being able to continue to work was nerve pain resulting from that injury, Tr. 58.

Plaintiff stated she suffered low back pressure and debilitating nerve pain up and down her leg. Tr. 58-59, 62. She had looked into, but not attended, physical therapy sessions for the nerve pain. Tr. 60. She explained her next step would be to see a neurologist and she was waiting for an appointment to be made in that regard. Tr. 60, 61. Plaintiff also discussed having depression as a result of the constant pain, Tr. 65, 67, but indicated she had discontinued counseling because it was difficult to focus because of the pain, Tr. 60-61, 67.

Plaintiff testified at the September 2015 administrative hearing that she received unemployment benefits after she stopped working in 2012 and was therefore maintaining a job search log and applying for work she was hoping she could perform. Tr. 54-56.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable interpretation of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents the

claimant from engaging in past relevant work.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot perform past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that the claimant can perform other jobs present in significant numbers in the national economy. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 10, 2016, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since the alleged onset date, March 12, 2012.  Tr. 22.  At step two, the ALJ determined Plaintiff had the following severe impairments:  spine disorder, morbid obesity, affective disorder and anxiety disorder.  Tr. 22.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments.  Tr. 23.

The ALJ assessed Plaintiff's Residual Functional Capacity (RFC) and determined she could perform light exertion level work with the following limitations:  she could occasionally climb, stoop, kneel, crouch, and crawl; she could perform work in which concentrated exposure to vibration and/or hazards was not present; in order to meet ordinary and reasonable employer expectations regarding attendance, production and work place behavior, she could understand, remember and carry out unskilled, routine and repetitive work that could be learned by demonstration and in which tasks to be performed were predetermined by the employer; and she could perform work that does not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public was not precluded.  Tr. 25.

///

At step four, the ALJ determined Plaintiff could not perform her past relevant work as a merchandiser, child monitor or order picker. Tr. 32. However, at step five, the ALJ determined that based on the testimony of the vocational expert, and considering Plaintiff's age, education, work experience and RFC, Plaintiff could perform other jobs present in significant numbers in the national economy, including the jobs of housekeeper (light), hand packager (light), production assembler (light), assembler (sedentary) and bench assembler (sedentary). Tr. 32-33. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from March 12, 2012, the alleged onset date, through the date of the ALJ's decision, February 10, 2016. Tr. 33.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred in this case by (1) improperly assessing the opinion testimony; and (2) discrediting Plaintiff without specific, clear and convincing reasons to do so. ECF No. 15 at 4.

## DISCUSSION

### A.  Medical Opinion Testimony

Plaintiff asserts the ALJ erred by failing to properly assess multiple medical source opinions of record. ECF No. 15 at 4-16.

In a disability proceeding, the courts distinguish among the opinions of three types of acceptable medical sources: treating physicians, physicians who examine but do not treat the claimant (examining physicians) and those who neither examine nor treat the claimant (nonexamining physicians). *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a nonexamining physician. *Benecke v. Barnhart*,

379 F.3d 587, 592 (9th Cir. 2004); *Lester*, 81 F.3d at 830.  In weighing the medical opinion evidence of record, the ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Moreover, the ALJ is required to set forth the reasoning behind its decisions in a way that allows for meaningful review.  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (finding a clear statement of the agency's reasoning is necessary because the Court can affirm the ALJ's decision to deny benefits only on the grounds invoked by the ALJ).  "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for us to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014).

The opinion of an acceptable medical source is given more weight than that of an "other source."  20 C.F.R. §§ 404.1527, 416.927; *Gomez v. Chater*, 74 F.3d 967, 970-71 (9th Cir. 1996).  Evidence from "other sources" is any information or statements from a non-medical source about any issue in Plaintiff's claim.  20 C.F.R. § 404.1513(a)(4).  The ALJ is required to consider observations by non-medical sources as to how an impairment affects a claimant's ability to work.  Pursuant to *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993), an ALJ is obligated to provide germane reasons for discounting "other source" statements.

### 1. Psychological Limitations

With regard to Plaintiff's psychological impairments, the ALJ determined Plaintiff had a severe affective disorder and a severe anxiety disorder, Tr. 22, which limited her to understanding, remembering and carrying out unskilled, routine and repetitive work that could be learned by demonstration and in which tasks to be performed were predetermined by the employer.  Tr. 25.  She was additionally limited to the performance of work that did not require interaction
///

with the general public as an essential element of the job, but occasional incidental contact with the general public was not precluded.  Tr. 25.

### a.    L. Paul Schneider, Ph.D.

On December 29, 2014, Dr. Schneider completed a Mental Source Statement and checked boxes indicating Plaintiff had several moderate, marked and severe limitations in basic work activities.  Tr. 463-464.  Dr. Schneider also marked that Plaintiff had "extreme" limitations in activities of daily living and in maintaining concentration, persistence and pace and marked limitations in social functioning.  Tr. 465.  He further opined that Plaintiff would likely be off task over 30% of the workday and would miss four or more days of work per month.  Tr. 465.  Dr. Schneider commented that Plaintiff's life was "extraordinarily dysfunctional."  Tr. 466.

The ALJ accorded the check-box form report "little weight."  Tr. 30.  The ALJ indicated the form mostly contained check off marks without supporting objective information, and the significant limitations were not consistent with Plaintiff's lack of mental health treatment and her ability to complete daily activities and perform work.  Tr. 30.

Although the Ninth Circuit recently stated in a footnote that there is no authority that a "check-the-box" form is any less reliable than any other medical form, *Trevizo v. Berryhill*, 871 F.3d 664, 677 n. 4 (9th Cir. 2017), the Ninth Circuit has consistently held that individual medical opinions are preferred over check-box reports, *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996); *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983); *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (holding "the regulations give more weight to opinions that are explained than to those that are not").  An ALJ's rejection of a check-box report that does not contain an explanation of the bases for the conclusions made is permissible.  *Crane*, 76 F.3d at 253; *Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (an ALJ need not accept a treating physician's opinion which is "brief and

conclusionary in form with little in the way of clinical findings to support [its] conclusion"). Here, Dr. Schneider's mental source statement provides no explanation in support of the significant limitations assessed on the check-box form.

Moreover, the significant limitations assessed on the form are not consistent with the weight of the evidence of record which demonstrated Plaintiff's mood had improved with medication, Tr. 381, 385, 389, she was not receiving any specific psychiatric treatment by January 2014, Tr. 452, and she had previously discontinued counseling, Tr. 67. Tr. 30. As discussed more fully below, Plaintiff's receipt of unemployment benefits and continued job seeking activities suggested, and other medical professionals have opined, that Plaintiff was capable of performing work but was unable to find suitable work. Tr. 30.

Substantial evidence supports the ALJ's determination to accord little weight to the significant mental health limitations assessed in Dr. Schneider's mental source statement.

### b. Emma Joan H. Billings, Ph.D.

Dr. Billings performed a psychological examination of Plaintiff on January 17, 2014. Tr. 442-447. Plaintiff indicated she was unable to continue to work because of an inability to sit for more than 30 minutes at a time, but also reported she was receiving unemployment benefits at that time. Tr. 443. Plaintiff was not participating in mental health therapy despite complaints of depression symptoms, situational anxiety, and panic attacks. Tr. 444-445. Dr. Billings diagnosed major depressive disorder, recurrent, moderate and anxiety disorder, NOS. Tr. 446. She described Plaintiff as a cooperative individual who was highly emotional throughout the assessment. Tr. 446. Dr. Billings indicated Plaintiff was able to follow directions without any repetition, she did not appear to have any difficulty with attention, she had only a mild loss of concentration on exam, and her pace
///

was within average rates. Tr. 446. Yet, Dr. Billings noted Plaintiff appeared "to only be functioning at a minimal level." Tr. 446.

The ALJ assigned partial weight to Dr. Billings' evaluation report. Tr. 30. The ALJ accorded weight to Dr. Billings' objective mental status examination, which indicated, consistent with the record, that Plaintiff could complete at least three-step commands. Tr. 30. Nevertheless, the ALJ found Dr. Billings' assessment that Plaintiff was functioning only at a minimal level inconsistent with Dr. Billings' findings that Plaintiff had only mild loss of concentration, she could respond to questions at an average rate, she could follow directions without repetition and she did not have difficulty with attention. Tr. 30.

Plaintiff contends the ALJ erred by failing to note "Dr. Billings' observations of several pertinent, positive findings." ECF No. 15 at 9. Plaintiff indicated Dr. Billings noted Ms. Walker had a concrete level of understanding, was only at the beginning level of abstract understanding, and erred in her serial 7s, ECF No. 15 at 9 (citing Tr. 445-446), and further noted Dr. Billings observed Plaintiff was "highly emotional," frequently cried during the interview, and spent the exam reclining and changing positions, ECF No. 15 at 9 (citing Tr. 443, 445-446). Plaintiff argues that had the ALJ weighed these observations "heavily," disability would have been compelled. ECF No. 15 at 9. However, consistent with the ALJ' ultimate RFC determination, Tr. 25, Dr. Billings' examination findings reflect that Plaintiff was capable of understanding, remembering and carrying out unskilled, routine and repetitive work. Tr. 446 (Plaintiff had no difficulty completing a three stage command). An ALJ may properly rely upon selected portions of a medical opinion while disregarding other parts. *See Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) ("It is not necessary to agree with everything an expert witness says in order to hold that his testimony contains 'substantial evidence.'" (quoting *Russell v. Bowen*, 856 F.2d 81, 83 (9th Cir. 1988))). In making her RFC determination, the ALJ took into account Dr. Billings'

objective findings, which indicated, consistent with the record, that Plaintiff could complete at least three-step commands.

With respect to Dr. Billings' comment that Plaintiff "**appears** to only be functioning at a minimal level," Tr. 446, the observation could be construed as an opinion by Dr. Billings that Plaintiff was only able to perform unskilled, routine and repetitive tasks, which is consistent with the RFC determination. If interpreted as an opinion that Plaintiff was limited to a greater extent, it would be inconsistent with Dr. Billings' examination findings that Plaintiff was able to follow directions without any repetition, she did not appear to have any difficulty with attention, she had only a mild loss of concentration on exam, and her pace was within average rates. Tr. 446.

The Court finds that the ALJ provided specific and legitimate reasons, supported by substantial record evidence, for discounting Dr. Billings' notation that Plaintiff appeared to be functioning at a minimal level. The ALJ did not err by otherwise crediting Dr. Billings' opinion, supported by objective findings, that Plaintiff could complete at least three-step tasks.

### c.    Fredrick Montgomery, M.D.

Dr. Montgomery performed a psychiatric evaluation pertaining to Plaintiff's worker's compensation claim on January 27, 2014. Tr. 448-454. Dr. Montgomery diagnosed mood disorder with moderate depressive symptoms related to a general medical condition, which is the lumber strain, and psychological factors, which are her current stress levels, financial, and lack of personal support as well as a hardworking history and pain disorder associated with a general medical condition. Tr. 453-454. He indicated the diagnosis was mildly in excess of what would be expected from her type of injury. Tr. 454. Dr. Montgomery opined there was no psychiatric treatment that would be curative, but that a work hardening program and/or return-to-work plan would certainly support Plaintiff's attempt to return to ///

employment.  Tr. 454.  He specifically concluded Plaintiff was "capable of working from a psychiatric point of view."  Tr. 454.

The ALJ assigned "great weight" to this assessment.  Tr. 30.  The ALJ indicated that although the worker's compensation report was not performed for the purposes of Social Security disability, the relatively normal examination and the conclusion that Plaintiff's psychological condition did not prevent work was consistent with the evidence of record.  Tr. 30.

Plaintiff asserts that the ALJ failed to account for the fact that Dr. Montgomery's report was based on an "L&I consultative exam" and appears to argue that standards for L&I benefits differ from Social Security disability standards.  ECF No. 15 at 14-15.  Contrary to Plaintiff's assertion, the ALJ specifically noted Dr. Montgomery's exam was a psychiatric evaluation pertaining to Plaintiff's worker's compensation claim and not performed for the purposes of Social Security disability.  Tr. 30.  The relatively normal psychiatric exam of Dr. Montgomery, including findings that Plaintiff's speech was well organized and no disorganization of thought processes existed, her recent and distant memory were normal and her judgment was within limits, was pertinent to the ALJ's evaluation of the evidence.  It was proper for the ALJ to consider the examination and accord weight to Dr. Montgomery's opinion, based on his psychiatric examination findings, that Plaintiff was "capable of working from a psychiatric point of view." Tr. 454.

### d.    Non-Examining Medical Professionals

State agency reviewer Michael L. Brown, Ph.D., evaluated Plaintiff on January 27, 2014.  Tr. 85-89.  Dr. Brown concluded Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  Tr. 85. He further found that Plaintiff could maintain simple, repetitive, routine tasks consistently, could work with supervisors and coworkers but not the general public

due to symptoms of anxiety and depression, and required work that did not change frequently. Tr. 88-89. On April 25, 2014, Renee Eisnhauer, Ph.D., performed the reconsideration psychological assessment and affirmed Dr. Brown's opinions. Tr. 103-105.

The ALJ accorded "significant weight" to the state agency assessments finding they were based on a review of the record, evidence supported their findings, and the assessors were familiar with the Social Security Administration regulations. Tr. 31.

The opinions of the above non-examining medical professionals lends further support to the ALJ's RFC determination that Plaintiff was capable of performing unskilled, routine and repetitive tasks with only occasional, incidental contact with the general public. The Court finds that, other than the significant limitations indicated in Dr. Schneider's check-box report, there has been no medical evidence provided that conflicts with the opinions of the state agency reviewers.

The ALJ did not err by failing to find greater mental restrictions than as set forth in the RFC determination. The psychological limitations assessed by the ALJ are supported by the weight of the record evidence and free of error.

### 2. Physical Limitations

With regard to Plaintiff's physical impairments, the ALJ determined Plaintiff had a severe spine disorder and morbid obesity, Tr. 22, which limited her to light exertion level work with certain postural and environmental restrictions. Tr. 25.

### a. Shereen Stocker, ARNP

Nurse Stocker, an "other source," filled out a "Medical Report" statement form provided by Plaintiff's attorney on March 23, 2015. Tr. 531-532. Nurse Stocker indicated Plaintiff must lie down for 15 to 30 minutes during the day to decrease low back pain and that Plaintiff could not sit, stand or walk for extended

periods. Tr. 531-532. Although Nurse Stocker stated that work on a regular and continuous basis would cause Plaintiff's condition to deteriorate, she opined that Plaintiff would not miss work due to her impairments if she attempted to work a 40-hour workweek. Tr. 532.

The ALJ accorded partial weight to Nurse Stocker's opinions. Tr. 31. The ALJ indicated Nurse Stocker's opinion that Plaintiff needed to lie down when in pain was primarily a subjective observation and no specific objective rationale was cited for the requirement. Tr. 31. The ALJ noted there was other evidence also indicating Nurse Stocker primarily relied on Plaintiff's subjective complaints; Nurse Stocker filling out disability paperwork to just "get the processes started." Tr. 31. The ALJ further held that the report was internally inconsistent because Nurse Stocker listed significant limitations due to pain, yet stated Plaintiff would not miss work due to her impairments. Tr. 31.

As determined by the ALJ, Nurse Stocker provided no objective basis for her opinion that Plaintiff needed to lie down for 15 to 30 minutes when pain occurred, therefore the limitation is based on Plaintiff's subjective complaint.[1] Furthermore, Nurse Stocker's report is internally inconsistent; she indicates Plaintiff had significant limitations, but also found that Plaintiff would not miss work if attempting to work a 40-hour workweek. Tr. 531-532. The ALJ provided germane reasons for discounting Nurse Stocker's "Medical Report."

///

///

_____

[1]As discussed below, the ALJ's reasons for discounting plaintiff's subjective complaints in this case are supported by the evidence of record and free of error. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (a physician's opinion may be disregarded when it is premised on the properly rejected subjective complaints of Plaintiff).

### b.   Lisa Rutherford, ARNP

On March 21, 2012, a few days after Plaintiff's on-the-job injury, Nurse Rutherford examined Plaintiff and released her to modified work duties with restrictions of reduced hours and no driving of motor vehicles while using the prescribed opioid pain medications.  Tr. 438-439.  On January 25, 2013, Nurse Rutherford again examined Plaintiff and released her to modified work duties which had been lessened to some degree.  Tr. 389-390.  On March 13, 2013, Nurse Rutherford again released Plaintiff to modified work duties.  Tr. 388.  On July 16, 2013, Nurse Rutherford released Plaintiff to full work activity without restriction. Tr. 360.

The ALJ assigned "great weight" to the findings of Nurse Rutherford because she treated Plaintiff, she reviewed a prior assessment with objective findings, and the record supported her opinions.  Tr. 29.

Plaintiff asserts that, based on Nurse Rutherford's findings that Plaintiff was limited to reduced work hours, Plaintiff was not capable of working on a regular and continuing basis eight hours per day, five days per week and, accordingly, was disabled under the Social Security Act.  ECF No. 15 at 12-13 citing Social Security Ruling 96-8p.  However, Nurse Rutherford released Plaintiff to modified work duty at her place of employment as a result of a specific finding that "there was no light duty available with the employer of injury."  Tr. 388.  This suggests Plaintiff was capable of performing light duty work, at the employer of injury, if available, on a regular and continuing basis.  In any event, an ability to work eight hours a day, five days a week is not necessarily required.[2]

_____

[2]Part-time work may constitute substantial gainful activity under the Social Security Act, or demonstrate the ability to engage in substantial gainful activity. 20 C.F.R. §§ 404.1572(a), 416.972(a) (work may be considered substantial even if it is done on a part-time basis); *Katz v. Secretary of Health & Human Services*, 972

The ALJ properly accorded weight to Nurse Rutherford's opinion that Plaintiff could perform work and did not err by failing to conclude Nurse Rutherford's opinions supported a finding that Plaintiff was disabled.

### c. St. Elmo Newton, III, M.D. & James M. Haynes, M.D.

Drs. Newton and Haynes completed a joint evaluation on June 25, 2013. Tr. 303-313. It was noted that following Plaintiff's March 12, 2012 on-the-job injury, Plaintiff had x-rays that showed only mild degenerative changes in the lumbar spine and, on April 16, 2012, a lumbar MRI was read as normal. Tr. 303, 306. A repeat MRI performed four months later showed facet changes at L4-L5, a slight bulge at L5 midline and degenerative changes in the sacroiliac joints. Tr. 304. She was treated with chiropractic care, massage therapy, physical therapy and anti-inflammatory medications and later received two injections in her right sacroiliac joint. Tr. 304.

The ALJ assigned "great weight" to the assessment of these physicians. Tr. 29. The ALJ indicated that while the report was produced for worker's compensation purposes, and thus was not necessarily consistent with Social Security disability standards, it was overall consistent with the evidence of record. Tr. 29.

///

---

F.2d 290, 294 (9th Cir. 1992) (the fact that the claimant worked only part-time is not enough alone to conclude that she was not engaged in substantial gainful activity); *Garnett v. Sullivan*, 905 F.2d 778 (4th Cir. 1990) (work as a bus driver involving minimal time per day typical of bus driving positions and substantial gainful activity); *Wright v. Sullivan*, 900 F.2d 675 (3rd Cir. 1990) (work as rape counselor in very flexible circumstances considered substantial gainful activity); *Beasley v. Califano*, 608 F.2d 1162 (8th Cir. 1979) (despite limits and difficulty, part-time work as a real estate broker considered substantial gainful activity).

Plaintiff argues that the ALJ should have found that the conclusion of Drs. Newton and Haynes that there was "nothing really physiologic[ally]" wrong with Plaintiff, did not match their examination findings. ECF No. 15 at 14. The Court does not agree.

Drs. Newton and Haynes thoroughly examined Plaintiff and noted Plaintiff could climb up on the examination table, the strength in her lower extremities was 5/5, a sensory examination was within normal limits, supine straight leg raise on the left was 60 degree, she could stand on either leg independently, there was great trochanter tenderness without neurological deficit and some degree of Waddell positively. Drs. Newton and Haynes indicated Plaintiff vocalized discomfort, but there was nothing really physiologic found. Tr. 309. They opined Plaintiff was fixed and stable and there were no physical restrictions preventing Plaintiff's return to employment. Tr. 311. Drs. Newton and Haynes determined Plaintiff could lift and carry up to 20 pounds occasionally and up to ten pounds continuously, she could occasionally perform postural activities except for frequent reaching, and there were no environmental restrictions. Tr. 314.

Contrary to Plaintiff's argument, the findings of Drs. Newton and Hayes are consistent with their examination results and the weight of the record evidence. The ALJ did not err by according great weight to this assessment.

### d.    Non-Examining Physician

State agency reviewing physician Wayne Hurley, M.D., evaluated Plaintiff on April 25, 2014. Tr. 101-103. Dr. Hurley determined Plaintiff could perform light exertion level work with some postural and environmental limitations. *Id*.

The ALJ accorded "significant weight" to the Dr. Hurley's assessment, finding his opinions were based on a review of the record, evidence supported his findings, and he was familiar with the Social Security Administration regulations. Tr. 31.

///

Plaintiff only contends that the ALJ failed to provide sufficient reasons for giving weight to the non-examining physician. ECF No. 15 at 15. When a nontreating source's opinion contradicts that of a treating physician, but it is not based on independent clinical findings, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence in the record. *Andrews v. Shalala,* 53 F.3d 1035, 1041 (9th Cir. 1995); *Ramirez v. Shalala*, 8 F.3d 1449, 1453 (9th Cir.1993) (applying test where ALJ relied on contradictory opinion of nonexamining medical advisor). Here, there is no acceptable treating physician opinion that contradicts the assessment of Dr. Hurley. Moreover, there is no requirement that the ALJ provide "sufficient reasons" for according weight to a medical professional, rather the Court reviews whether the ALJ has failed to provide legally sufficient reasons for **rejecting** evidence. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Accordingly, Plaintiff's argument with respect to Dr. Hurley is without merit.

Based on the foregoing, the Court finds that the ALJ did not err by failing to find greater physical limitations than as assessed in the RFC determination. The physical limitations assessed by the ALJ are supported by the weight of the record evidence and free of error.

## B. Plaintiff's Symptom Testimony

Plaintiff also challenges the ALJ's finding that Plaintiff was not entirely credible, Tr. 25. ECF No. 15 at 16-20.

It is the province of the ALJ to make credibility determinations. *Andrews*, 53 F.3d at 1039. However, the ALJ's findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen*, 80 F.3d at 1281; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what

evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible. Tr. 25.

The ALJ first indicated Plaintiff's subjective complaints were not reasonably consistent with the medical evidence of record. Tr. 26. The ALJ noted that although examinations revealed some positive findings in the spine, overall, they had been fairly unremarkable and did not show that Plaintiff's symptoms were disabling. Tr. 26.

A lack of supporting objective medical evidence is a factor which may be considered in evaluating an individual's credibility, provided it is not the sole factor. *Bunnell v. Sullivan*, 347 F.2d 341, 345 (9th Cir. 1991) (Once a claimant produces objective medical evidence of an underlying impairment, an adjudicator may not reject the claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.); *see also Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 883 (9th Cir. 2006) (An ALJ may not make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence.").

As indicated in Section A, above, the medical evidence of record does not support Plaintiff's allegation of disabling physical and/or mental limitations.

The ALJ next noted Plaintiff has reported the effectiveness of medication in improving her mental health symptoms. Tr. 26.

The effectiveness of medication in alleviating pain and other symptoms is a relevant factor to consider in evaluating the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3)(iv); *Morgan v. Comm'r of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (an ALJ may properly rely on a report that a plaintiff's

mental symptoms improved with the use of medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (noting impairments that are controlled by treatment cannot be considered disabling).

The record reflects Plaintiff's mood had improved with medication, Tr. 381, 385, 389, she was not receiving any specific psychiatric treatment by January 2014, Tr. 452, and she had previously discontinued mental health counseling, Tr. 67. Tr. 26-27. It was reported in June 2014 that Plaintiff's affect was brighter, she was less anxious and her thought process was more focused, and Plaintiff admitted her depression was slightly better. Tr. 27, 558-559. As indicated by the ALJ, mental status examinations performed in 2015 showed Plaintiff was alert/oriented and in no acute distress. Tr. 27, 481, 486, 489, 492.

The evidenced improvement of Plaintiff's mental health symptoms was an additional proper basis to discount her subjective complaints.

The ALJ also indicated Plaintiff was not working only because no light duty work was available at her job. Tr. 27, 388. The inability to work due to nondisability factors is a valid basis for rejecting a claimant's credibility. *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (stating that in making a credibility determination, the ALJ did not err by considering that claimant left his job because he was laid off, rather than because he was injured).

The ALJ properly discounted Plaintiff's credibility on the basis that she was not working for reasons unrelated to her alleged disabling limitations.

The ALJ also mentioned Plaintiff continued to apply for work online as a cashier during the relevant time period, but she was not interviewed. Tr. 27. Seeking employment after the alleged onset of disability date may be a factor in an ALJ's credibility determination. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219 (9th Cir. 2009). This was additionally a proper basis to find Plaintiff less than fully credible.

///

The ALJ next noted Plaintiff received unemployment benefits after her worker's compensation claim was closed. Tr. 27. A disability claimant's acceptance of unemployment benefits can constitute a valid reason in support of an ALJ's adverse credibility determination. *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (upholding ALJ's rejection of a claimant's credibility where the claimant had accepted unemployment insurance benefits "apparently considering himself capable of work and holding himself out as available for work"); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("continued receipt" of unemployment benefits can cast doubt on a claim of disability); *Hasso v. Colvin*, 617 Fed. Appx. 780, 781 (9th Cir. 2015) (unpublished) (upholding adverse credibility determination based in part on the claimant's "receipt of unemployment benefits").

Here, Plaintiff filed for and received unemployment benefits after she stopped working at her job and, consequently, acknowledged she was "ready, willing, and able to work" at the time she filed for those benefits. See Wash. Rev. Code § 50.20.010(c)(ii) (indicating "an individual must be ready, able, and willing, immediately to accept any suitable work which may be offered to him or her and must be actively seeking work"). Accordingly, Plaintiff's acceptance of unemployment benefits while simultaneously seeking Social Security benefits was a proper basis to discount Plaintiff's credibility.

Finally, the ALJ indicated Plaintiff's reported full range of daily activities were inconsistent with her assertions of totally disabling symptoms. Tr. 27. It is well-established that the nature of daily activities may be considered when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). While one does not need to be "utterly incapacitated" to be disabled, *id.*, it was proper for the ALJ to find Plaintiff's reports of activities such as doing household chores (laundry, dishes, sweeping, vacuuming, mowing and preparing meals); caring for her children, an elderly friend, and pets; and shopping were inconsistent with the

debilitating limitations she alleged[3] and thus detracted from her overall credibility. Tr. 27.  *See Smith v. Comm'r Soc. Sec. Admin.*, 611 Fed.Appx. 897, 900 (9th Cir. 2015) (affirming the ALJ's adverse credibility determination and noting the ALJ found the claimant's testimony was contradicted by "her own description of helping with" the "care of children" and household chores); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (affirming the ALJ's adverse credibility determination and noting that the claimant's claim of disability was undermined by testimony about her daily activities, such as "attending to the needs of her two young children," cooking, and shopping); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) ("Even where [a claimant's daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  It is the role of the trier of fact, not this Court, to resolve conflicts in evidence.  *Richardson v. Perales*, 402 U.S. 389, 400 (1971).  The Court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ even if it might justifiably have reached a different result upon *de novo* review.  42 U.S.C. § 405(g).  After reviewing the record, the Court finds that the ALJ provided clear and convincing reasons, which are fully supported by the record, for discounting

---

[3]Plaintiff indicated she had low back pain that was exacerbated by prolonged sitting and standing, Tr. 412, she was unable to sit for more than 30 minutes at a time, Tr. 443, she had "extreme difficulty standing, sitting and walking," Tr. 212, she was only able to stand 20 to 30 minutes at one time, Tr. 212, and she needed to lie down frequently due to pain, Tr. 212.  Tr. 25.

Plaintiff's subjective complaints. Accordingly, the ALJ did not err by finding Plaintiff's symptom allegations were not entirely credible in this case.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and free of legal error. Accordingly, **IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED**.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Defendant and the file shall be **CLOSED**.

DATED May 30, 2018.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE